**Roger L. GRAHAM, John B. Graham, John Regmund, Glenn Regmund, Wilma Regmund, Raellen Regmund Mattingly, Rayanne Regmund Chesser, Albert O. Menn, and Irene C. Menn, Appellants**

v.

**George J. PROCHASKA, Jr., Patricia Prochaska Holland, Jeanette Prochaska Mazza, Dawn Prochaska Snyder, Frederick James Prochaska, II, and Rebecca Prochaska Willis, Appellees.**

No. 04–12–00755–CV.

Court of Appeals of Texas, San Antonio.

Dec. 31, 2013.

Dissenting Opinion by Justice Barnard Jan. 15, 2014.

Robert S. Ballentine, Burleson LLP, Houston, TX, Thomas Ciarlone Jr., Burleson LLP, San Antonio, TX, for Appellant Attorney.

Jonathan D. Baughman, Christopher Lance Halgren, McGinnis, Lochridge & Kilgore, LLP, Houston, TX, for Appellee Attorney.

Sitting: SANDEE BRYAN MARION, Justice MARIALYN BARNARD, Justice LUZ ELENA D. CHAPA, Justice.

## OPINION

Opinion by LUZ ELENA D. CHAPA, Justice.

In this appeal, we must construe a 1950 warranty deed to determine the nature and size of the royalty interest retained by the grantors. The trial court rendered summary judgment in favor of the Prochaskas, who are the appellees and heirs of the grantors, and ruled they own a "floating" one-half royalty interest. The Regmunds, who are the appellants and heirs of the grantees, contend the trial court misconstrued the warranty deed and ask us to reverse and render judgment that the Prochaskas are entitled to a "fixed" one-sixteenth royalty interest. We affirm.

## BACKGROUND

### The Warranty Deed

In 1950, George and Elsie Ann Prochaska conveyed a tract of land in Karnes County, Texas, to John and Frances Regmund. The granting clause conveyed "all that certain tract or parcel of land." But the Prochaskas reserved[1] a royalty interest that is the center of this dispute:

SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns, one-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof, same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except taxes;

\* \* \*[2]

AND PROVIDED this reservation is burdened with paying the two outstanding mineral royalty reservations, each of One–Fourth (1/4) of one-eighth (1/8) royalty, one of which reservations is described in the deed from John Hancock Mutual Life Insurance Company to E.S. Joslin, now of record in Vol. 141, page 161, Deed Records of Karnes County, Texas, and the other reservation is described in the deed from E.S. Joslin, et ux to A.W. Powell, Jr., et al now of record in Vol. 165, page 80 of the Deed Records of Karnes County, Texas; And this reservation shall only be effective to

---

1. For ease of reference, we will refer to the Prochaskas' royalty interest as a "reservation," although the parties differ on whether the interest was "reserved" or "excepted." Our discussion will explain why the difference is immaterial to the resolution of this case.

2. The omitted clause limits the nature of reservation to a nonparticipating royalty interest and does not aid our determination of the nature or size of the royalty reserved.

the extent that one or both of said outstanding reservations become terminated.

It being the intent of the parties hereto that John W. Regmund and wife, Frances E. Regmund, as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed, and the reservation herein above recited in favor of the grantor herein, shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if, as and when said interest in favor of said parties terminate.

The "save and except" clause excludes a royalty interest from passing under the deed. The "provided" clause identifies previously reserved "mineral royalty" interests, with which the Prochaskas' royalty interest is "burdened." The deeds creating those interests were offered as summary judgment evidence. The "intent" clause clarifies the relationship between the Prochaskas' reserved interest, the Regmunds' received interest, and the previously reserved interests identified in the "provided" clause.

*The Present Controversy*

The original mineral leases providing a one-eighth landowner's royalty in effect at the time of the 1950 conveyance have expired. The Regmunds have executed new leases that provide a one-fifth landowner's royalty, and they filed the underlying lawsuit seeking a declaratory judgment that the Prochaskas reserved a "fixed" one-sixteenth royalty interest from the 1950 deed. According to the Regmunds, the Prochaskas' allegedly fixed royalty interest limits them to receiving one-sixteenth of production, regardless of the landowner's royalty set by the newly executed mineral leases. The fixed one-sixteenth royalty would be deducted from the Regmunds' one-fifth landowner's royalty. Under the Regmunds' interpretation, the Prochaskas would receive one-sixteenth of production and the Regmunds would keep the remaining eleven-eightieths of production from the landowner's royalty ($1/5 - 1/16 = 11/80$).

The Prochaskas counterclaimed for declaratory relief, contending they were entitled to a "floating" one-half royalty interest. Under their interpretation, they should receive one-half of whatever royalty the Regmunds have secured on the conveyed lands, now and in the future. Accordingly, the Prochaskas contend they should currently receive one-tenth of production, which is one-half of the landowner's royalty, and the Regmunds would take the remaining one-tenth of production ($1/5 \times 1/2 = 1/10$).

The trial court held a hearing on the parties' competing motions for summary judgment. The court rendered judgment for the Prochaskas, construing the deed to reserve a floating one-half royalty interest in the current, and any future, mineral leases.

## STANDARD OF REVIEW

We review a trial court's ruling on motions for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). If competing motions for summary judgment were filed, with one being granted and the other denied, we review all the issues presented and render the judgment the trial court should have rendered. *Id.* To determine whether the prevailing party below was entitled to summary judgment, we view the evidence in the light most favorable to the party against whom summary judgment was rendered. *Id.*

## DEED CONSTRUCTION

### Rules of Construction

■ The parties contend the deed is unambiguous, although they offer competing constructions of the reserved royalty interest. The construction of an unambiguous deed is a question of law for the court to decide de novo. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991). When construing an unambiguous deed, the court ascertains the intent of the parties from the "four corners" of the deed. *Id.* Under circumstances such as those presented by this case, the court may consider other instruments that are incorporated by reference into the deed. *See Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 676 (1956) (holding the "subject to" clause in a deed incorporated mineral leases to define the estate conveyed, and the nature, extent and character of such estate); *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432, 434 (Tex.App.-San Antonio 1991, writ denied); *see also Johnson v. Fox*, 683 S.W.2d 214, 216 (Tex.App.-Fort Worth 1985, no writ) ("[C]ourts can construe an instrument containing a reservation or exception together with other instruments to which it refers.") (citing *Williams v. J. & C. Royalty Co.*, 254 S.W.2d 178 (Tex.Civ.App.-San Antonio 1952, writ ref'd)).

■ We harmonize all parts of the deed, understanding that the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *Luckel*, 819 S.W.2d at 462. If different parts of the deed appear contradictory or inconsistent, we strive to harmonize all of the parts and construe the instrument to give effect to all of its provisions. *Id.* The deed's terms are given their plain, ordinary, and generally accepted meanings unless the deed itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.

1996). We determine the parties' intent from the whole document, "not by the presence or absence of a certain provision." *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex.1998). Arbitrary rules of construction should not be applied absent some ambiguity or irreconcilable conflict that cannot be resolved through harmonization. *See Luckel*, 819 S.W.2d at 462; *Hancock v. Butler*, 21 Tex. 804, 816 (1858); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex.App.-Eastland 2006, pet. denied); *see also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds & Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L.REV. 1, 72 (1993) ("[A]s a general matter, courts take the position that they should initially attempt to harmonize the deed language within the four corners of the instrument. Only upon their inability to harmonize within the four corners, should the courts resort to anti-harmonizing canons.").

### Reservations and Exceptions

■ "[A] warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell*, 299 S.W.2d at 675. Property "excepted" or "reserved" under a deed is "never included in the grant" and is "something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *King v. First Nat'l Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260, 262 (1946). Reservations must be made by "clear language," and courts do not favor reservations by implication. *Monroe v. Scott*, 707 S.W.2d 132, 133 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.). Exceptions "must identify, with reasonable certainty, the property to be excepted from the larger

conveyance." *Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex.App.El Paso 2007, no pet.).

### MINERAL ESTATES & ROYALTY INTERESTS

*Mineral Estates & Leases Generally*

■■■■ Landowners generally own the right to exploit the minerals under their land, or "the mineral estate." *See Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 15 (Tex.2008); *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex.1995). The mineral estate encompasses five rights and attributes, including the right to receive royalties.[3] *French*, 896 S.W.2d at 797. Landowners "lease" their minerals to an operator for development, but the typical mineral lease actually conveys the mineral estate as a determinable fee estate. *Luckel*, 819 S.W.2d at 464. As the holder of a determinable fee interest, the "lessee-operator" has the present possessory interest in the mineral estate. Accordingly, the "lessor-landowner" is left with a future interest, the possibility of reverter, in the mineral estate. *Id.*

■■■■ The owner of a present or future interest in the mineral estate may convey or reserve his mineral interest. *Id.* The grantor does not need to part with all the attributes of the mineral estate; "individual [attributes] can be held back, or reserved in the grantor." *French*, 896 S.W.2d at 797. A grantor may also convey a fractional interest in the mineral estate. The owner of a fractional mineral interest is generally entitled to a proportional amount of the bonuses, rental, and royalties to be received under a lease. *Gibson v. Turner*, 156 Tex. 289, 294 S.W.2d 781, 786 (1956). Parties to a deed may, however, agree to limit or expand the royalty interest to be greater or less than the fractional mineral interest conveyed or reserved. *Patrick v. Barrett*, 734 S.W.2d

646, 648 (Tex.1987); *but see Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 511–12 (Tex.App.-Fort Worth 2011, pet. denied) (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

*Royalty Interests*

■■■■ A royalty interest is defined under well-established oil and gas law as the right to receive a share of gross production of the minerals produced under a mineral lease, free of the costs of production. *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 338 S.W.2d 143, 147 (1960). The basic royalty interest, or "landowner's royalty," is the fraction of production, free of the costs of production, which a landowner-lessor is entitled to receive from the operator-lessee under the terms of his lease. *See Heritage Res.*, 939 S.W.2d at 121–22. The right to receive royalty payments, as one of the rights and attributes comprising the mineral estate, is an intangible and separately alienable property interest. *Luckel*, 819 S.W.2d at 464.

■■■■ A mineral-interest owner may create, by conveyance, reservation, or exception, a royalty interest out of either the total production achieved under a lease or from the landowner's royalty. *See id.* at 463–64. Generally, such a diminished royalty interest is termed a "nonparticipating" royalty interest because the holder only has the right to a share of production. *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 344 (Tex.App.-San Antonio 2007, pet. denied). These royalty interests may, like interests in the mineral estate, be conveyed or reserved as determinable fee interests and, therefore, be separated into

---

**3.** The other four are the right to develop the mineral estate; the right to lease the mineral estate; the right to receive bonus payments; and the right to receive delay rentals. *French*, 896 S.W.2d at 797.

present and future interests. *See Luckel,* 819 S.W.2d at 464; *see, e.g., Bagby v. Bredthauer,* 627 S.W.2d 190, 193–95 (Tex. App.-Austin 1981, no writ) (grantors reserved the possibility of reverter in a determinable royalty interest).

In the 1920s and 1930s, the landowner's royalty became standardized at one-eighth of production. *Concord Oil,* 966 S.W.2d at 459; *Luckel,* 819 S.W.2d at 462; 1 ERNEST E. SMITH & JACQUELINE LANG WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][1], at 2–64 (LexisNexis Matthew Bender, 2nd ed. 2013). Leases containing royalties larger than one-eighth became increasingly common in the mid–1970s. 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][1], at 2–64. The ubiquity of leases providing for a one-eighth landowner's royalty led the Texas Supreme Court to take judicial notice that "the usual royalty provided in mineral leases is one-eighth." *Garrett v. Dils Co.,* 157 Tex. 92, 299 S.W.2d 904, 907 (1957); *see also State Nat. Bank of Corpus Christi v. Morgan,* 135 Tex. 509, 143 S.W.2d 757, 761 (1940) ("The fact stated in the foregoing quotation, that the usual royalty in oil and gas leases is 1/8, is in our opinion one so generally known that judicial knowledge may be taken of it."). The historical standardization of the landowner's royalty at one-eighth of production has sometimes created confusion in the construction of deeds from that period, where the use of conflicting fractions suggests the parties mistakenly assumed the landowner's royalty would always be one-eighth. *See Garrett,* 299 S.W.2d at 907; *Luckel,* 819 S.W.2d at 462; *see generally* 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A] (describing the problems in deed construction likely caused by such a mistaken assumption). The theory that parties from that period mistakenly assumed

and conceptualized the landowner's royalty as set at one-eighth of production is the "estate-misconception" theory. *See Concord Oil,* 966 S.W.2d at 460 (acknowledging the estate-misconception theory and stating an understanding of the theory is helpful and instructive, although not dispositive, in the construction of deeds).

## How Is the Nature and Size of a Royalty Interest Determined?

There are two kinds of nonparticipating royalty interests. *See Luckel,* 819 S.W.2d at 464. A "fixed" or "fractional" royalty interest entitles the owner to an absolute fraction of production—it is not affected by the amount of the landowner's royalty. *Id.; Sundance Minerals,* 354 S.W.3d at 511–12; *see, e.g., Watkins v. Slaughter,* 144 Tex. 179, 189 S.W.2d 699, 699–700 (1945) (holding a reservation of "a 1/16 interest in and to all of the oil, gas and other minerals" describes a fixed royalty interest). In contrast, a "fraction-of" or "floating" royalty interest entitles its owner to a share of the landowner's royalty obtained under a lease. *See Luckel,* 819 S.W.2d at 464; *Sundance Minerals,* 354 S.W.3d at 512; *see, e.g., Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543, 544–45 (1937) (holding a reservation of "an undivided one-half interest in and to the royalty rights on all of oil and gas and other minerals" described a floating royalty interest). Thus, the value of the royalty interest "floats" in accordance with the size of the landowner's royalty.[4] *Sundance Minerals,* 354 S.W.3d at 512. The fundamental distinction between the two kinds of nonparticipating royalty interests is the source of the royalty payments: fixed royalty interests are an unchanging fraction of total production obtained under a mineral lease, but floating royalty inter-

4. We use the more recent terms "fixed" (in place of "fractional") and "floating" (in place of "fraction of") when discussing the two

kinds of royalty interests because they vividly describe the differing natures of the two types of royalty interests.

ests come out of the landowner's royalty and vary in accordance with that fraction of production. *See Luckel,* 819 S.W.2d at 464; *Sundance Minerals,* 354 S.W.3d at 512; 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][2], at 2–64; 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS LAW § 327.2, at 87–88 (LexisNexis 2012).

Each of the two types of nonparticipating royalty interests may be created by a variety of language. *Compare* 2 WILLIAMS AND MEYERS, OIL & GAS LAW § 327. 1, at 81–82 (six examples of language creating fixed royalty interests), *with id.* § 327.2, at 83–84 (six examples of language creating floating royalty interests). Problems of construction arise when deeds create royalty interests described as "a fraction of one-eighth royalty" or "a fraction of the usual one-eighth royalty." Depending on the context of the description, Texas courts have construed the same language in different deeds in different ways. *Compare Pickens v. Hope,* 764 S.W.2d 256, 258–59, 267 (Tex.App.-San Antonio 1988, writ denied) (holding "an undivided 1/4 of the usual 1/8 royalty" reserved a fixed one thirty-second royalty), *with Sundance Minerals,* 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

When a deed contains a reservation of "a fraction of one-eighth," "a fraction of one-eighth royalty," "a fraction of the one-eighth royalty," or "a fraction of the usual one-eighth royalty," a party may argue that "one-eighth" should be understood as a stand-in for the landowner's royalty and therefore convey or reserve unto them a floating royalty interest. *E.g., Hudspeth v. Berry,* No. 2–09–225–CV, 2010 WL 2813408, at *3 (Tex.App.-Fort Worth July 15, 2010, no pet.) (mem. op.). Arguments for construing such language as conveying

or reserving fixed royalties are based on the estate-misconception theory. *See generally* 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A]. But courts generally construe simple grants or reservations of "a fraction of one-eighth" or its variations as creating a fixed royalty interest, the size of which is determined by multiplying the two fractions together. *See Pickens,* 764 S.W.2d at 258–59, 267; *Hawkins v. Tex. Oil & Gas Corp.,* 724 S.W.2d 878, 889 (Tex.App.-Waco 1987, writ ref'd n.r.e) (holding grant of "1/4 of the 1/8 royalty interest" conveyed a fixed one thirty-second royalty interest); *Helms v. Guthrie,* 573 S.W.2d 855, 857 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n.r.e.) (holding reservation of "1/2 of the 1/8Th royalty (same being a 1/16Th of the total production)" described a fixed royalty). This accords with the literal, mathematical meaning of a "fraction of a fraction." *See Heritage Res.,* 939 S.W.2d at 121 ("plain language" rule). Sometimes, however, the context of the entire deed leads courts to harmonize variations of a "fraction of one-eighth" in favor of finding a floating royalty. *See Coghill v. Griffith,* 358 S.W.3d 834, 837–40 (Tex. App.-Tyler 2012, pet. denied) (holding reservation of "an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral leases" described a floating one-eighth royalty); *Sundance Minerals,* 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

## DISCUSSION

### The "save and except" clause

■ The "save and except" clause of the 1950 deed describes the Prochaskas' reserved royalty interest in two different ways. The first phrase reserves "one-half

(1/2) of the one-eighth (1/8) royalty to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof." The second phrase continues "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except taxes." We must, if possible, harmonize these phrases considering the reservation as a whole.[5] *Concord Oil*, 966 S.W.2d at 457; *Luckel*, 819 S.W.2d at 462.

The parties' major dispute is over what kind of royalty interest is described by the first phrase of the "save and except" clause. The Regmunds argue that the language "one-half (1/2) of the one-eighth (1/8) royalty" should be construed as reserving a fixed royalty interest. The Prochaskas counter that a floating interest was created because they reserved one-half of "the one-eighth (1/8) royalty to be provided in any and all leases ... now upon or hereafter given on said land."

We agree with the Prochaskas that "one-eighth royalty" must be read with the surrounding descriptive language. "One-eighth royalty" is modified by "the ... to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof." The use of the word "the" denotes that "the one-eighth royalty" is a distinct or particular royalty. *See* 2 SHORTER OXFORD ENGLISH DICTIONARY 3228, at 2 (6th ed. 2007) (defining "the" as "[d]esignating one

or more persons or things particularized by ... a phr[ase] introduced by a preposition or inf[initive] ..."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1221, at 2 b(1) (10th ed. 1999) ("The" is "used as a function word before a noun to limit its application to that specified by a succeeding element in the sentence."). The succeeding phrase, "to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof," further distinguishes and particularizes "the one-eighth royalty." *See* 2 SHORTER OXFORD ENGLISH DICTIONARY 3228, AT 2; MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1221, at 2 b(1).

Setting aside "one-eighth" for a moment, we note that the reservation of "one-half of the royalty to be provided in any and all leases" reserves a floating royalty. The objective intent of that language would be to reserve a portion of the landowner's royalty—i.e., the royalty provided in *leases*, not an absolute fraction of production. *See Luckel*, 819 S.W.2d at 463 (holding "[t]he language 'one-fourth of any and all royalties reserved under' future leases is clear and unambiguous" to describe a floating royalty); *cf. Schlittler*, 101 S.W.2d at 545 (holding a reservation of "an undivided one-half interest in and to the royalty rights on all of oil and gas and other minerals" described a floating royalty interest). Furthermore, the language "in any and all leases ... *now upon or hereafter given*" objectively shows the floating

---

**5.** The Regmunds argue that according to *Hudspeth* no harmonization is required because there are no conflicting fractions, and they urge us to resolve any apparent contradictions or inconsistencies in the deed by applying two secondary canons of construction: the canon construing the conveyance of the greatest estate possible and the canon construing ambiguities against the grantor. First, to the extent that *Hudspeth* may suggest harmonization is only required where there are conflicting fractions, we disagree and decline to follow that reasoning. Second, we question whether the cited canons can fruitfully be applied to deciding whether a royalty interest is fixed or floating. The former is absolute, but the latter is contingent on the amount of the landowner's royalty. Regardless, we must first attempt to harmonize the four corners of the deed, and we can do so without these canons. *See Luckel*, 819 S.W.2d at 461–62; *Stewman Ranch*, 192 S.W.3d at 811.

interest would apply to both existing and future leases (emphasis added). *See Coghill*, 358 S.W.3d at 839 (holding reservation of "royalties payable under the terms of said lease, as well as . . . royalties provided for in any future oil, gas and/or mineral lease covering said lands or any part thereof" applied to then-current and future leases).

Of course, we may not simply disregard the modifier "one-eighth." We decline, however, to construe "one-eighth" in the description of the landowner's royalty as a limitation of the Prochaskas' interest to a fixed royalty. *See id.* (holding reservation of "an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral leases" described a floating one-eighth royalty); *Sundance Minerals*, 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest). Instead, its presence reflects the common misconception of that period that the landowner's royalty would always be one-eighth of production obtained under a lease. *Concord Oil*, 966 S.W.2d at 460; Garrett, 299 S.W.2d at 907; 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A], at 3–47; *see Heritage Res.*, 939 S.W.2d at 121 ("We give terms their plain, ordinary, and generally accepted meaning *unless the instrument shows that the parties used them in a technical or different sense.*") (emphasis added). We note that the deed before us was executed in 1950—seven years before the Texas Supreme Court took judicial notice that "the usual royalty provided in mineral leases is one-eighth." *Garrett*, 299 S.W.2d at 907. In addition, the mineral lease that was then in effect provided a one-eighth landowner's royalty. Accordingly, we construe "one-eighth" within context of the surrounding language "the . . . royalty to be provided in any and

all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof" as an expression of the parties' assumption that the landowner's royalty would always be one-eighth of production. *See id.; Heritage Res.*, 939 S.W.2d at 121.

The Regmunds urge this court to isolate the language "one-half (1/2) of the one-eighth (1/8) royalty" from the rest of the phrase and thereby to construe the Prochaskas' reservation as a fixed 1/16 royalty interest, directing us to cases construing variations of a "fraction of one-eighth royalty" as fixed interests. *See Hudspeth*, 2010 WL 2813408, at *4; *Helms*, 573 S.W.2d at 857; *Tiller v. Tiller*, 685 S.W.2d 456, 457–58 (Tex.App.-Austin 1985, no writ). We acknowledge that the truncated phrase "one-half of the one-eighth royalty" falls within the line of cases construing variations of a "fraction of one-eighth royalty" as fixed royalty interests. We agree the language in those cases did not sufficiently show the parties intended any technical meaning to be applied to "one-eighth royalty," nor did it justify using the surrounding circumstances to deviate from the plain, mathematical meaning. And if that were the complete and unadorned language of the reservation before us, we would likely construe that as an objective expression of a fixed royalty interest. *See Hawkins*, 724 S.W.2d at 889.

But context matters. The language of those deeds is not the language of the deed before us, and the Regmunds' construction asks us to ignore the full context of the reservation described as "one half (1/2) of *the* one-eighth (1/8) royalty *to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given* " (emphasis added). As we have explained, that language objectively expresses the parties' intent to reserve one-half of the royalty to be provided in current and fu-

ture leases, and also reflects the parties' assumption that the landowner's royalty would always be one-eighth, consistent with the mineral lease that was presently covering the property. Unlike cases where courts have declined to delve into the subjective meaning behind the use of "one-eighth," *see Hawkins,* 724 S.W.2d at 889 (holding grant of "1/4 of the 1/8 royalty interest" conveyed a fixed one thirty-second royalty interest), the deed before us contains additional language that provides the context necessary to objectively determine that the parties assumed the landowner's royalty would always be one-eighth of production. The Regmunds, in arguing that the phrase describes a fixed royalty, have not offered any construction that accounts for the entire phrase. But we must construe *all* the language of the deed. *Concord Oil,* 966 S.W.2d at 457. Accordingly, we distinguish the Regmunds' cited authorities because they do not contain the same language as the 1950 deed.

Having determined that the first phrase of the "save and except" clause describes a floating royalty interest, we must attempt to harmonize it with the second, describing the reserved interest as "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except tax-es." This language, *standing alone,* would reserve a fixed royalty interest. *See Watkins,* 189 S.W.2d at 700. However, as previously explained, the prior phrase objectively shows that the parties assumed the landowner's royalty, of which the Prochaskas would take half, would always be a one-eighth royalty. In light of the first phrase, we conclude the parties naturally assumed that the value of the Prochaskas' reserved royalty interest would always be "one-sixteenth of production." Accordingly, we harmonize the second phrase as a statement of the value that the parties (mistakenly) expected the Prochaskas' floating one-half royalty reservation would always have, i.e. one-sixteenth of production.[6] The parties' assumption that one-half of the landowner's royalty under future leases would always equal one-sixteenth of production does not alter our conclusion that the "save and except" clause unambiguously shows the intent to reserve one-half of the landowner's royalty "in any and all leases for oil, gas and other minerals now upon or hereafter given on said land."

### The "intent" clause

■ The final clause, or the "intent" clause, confirms that the parties were proceeding under the assumption that the

---

**6.** We note the Court in *Luckel* criticized the court of appeals for relying on the estate-misconception theory to arbitrarily choose which provisions of the deed before it should be given effect. 819 S.W.2d at 462. The court of appeals purportedly "harmonized" the granting clause, conveying "an undivided one thirty-second (1/32nd) royalty interest," with the future lease clause, providing the grantees would receive "one-fourth of any and all royalties reserved under [future] leases" by reasoning that "the clear and unambiguous language 'one-fourth of any and all royalties reserved under said leases' really meant a fixed 1/32nd." *Id.* at 461–62. The Court explained such reasoning could be equally well employed to show the parties intended a floating one-fourth royalty interest; and the court of appeals erred by "ignor[ing] the express language used … produc[ing] different assumptions about what the parties' actual intent was." *Id.* at 462. The Court ultimately held the deed conveyed two royalty interests: a fixed one thirty-second royalty interest under the then-current leases and a floating one-fourth royalty interest under future leases. *Id.* at 464. Our reasoning avoids the error criticized in *Luckel* because the presence of "one-eighth" in the description of the landowner's royalty objectively shows the parties assumed that the landowner's royalty, of which the Prochaskas reserved half, would always be one-eighth of production, and we have read the second phrase in light of their assumption.

landowner's royalty in future leases would always be one-eighth of production and underscores the importance of context in deed construction. The deed states that the parties intended the Regmunds "as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed." In another case, we might construe this description of the Regmunds' royalty interest as limiting the Regmunds' interest to a fixed one-sixteenth royalty because the parties to a deed may modify the default royalty interest conveyed with a mineral interest. *See Gibson,* 294 S.W.2d at 786; *Patrick,* 734 S.W.2d at 648; *Pickens,* 764 S.W.2d at 267 (holding "an undivided 1/4 of the usual 1/8 royalty" reserved a fixed one thirty-second royalty). However, the surrounding context of the "intent" clause does not show that the parties intended to limit the royalty interest conveyed with the mineral estate. *See Sundance Minerals,* 354 S.W.3d at 512 (holding that the grantors reservation of a one-half mineral estate were entitled to a floating one-half royalty in spite of qualifying language suggesting they limited the royalty to a fixed one-sixteenth).

Instead, the context of the "intent" clause and the preceding "provided" clause shows that the Regmunds were immediately entitled to their royalty interest, as opposed to the Prochaskas' interest, which would not be effective until prior "outstanding mineral royalty" interests terminated. The "provided" clause describes "this reservation"—the Prochaskas' royalty interest—as "burdened with paying the two outstanding mineral royalty reservations." The phrase "mineral royalty reservation" is not a legal term of art, although the reservations are described as being "each of One-fourth of one-eighth (1/8) royalty." The clause goes on to say "this reservation"—the Prochaskas' royalty interest—is only "effective to the extent that one or both of said outstanding reservations become terminated." In a similar vein, the "intent" clause states that "the reservation herein above recited in favor of the grantor herein"—the Prochaskas' royalty interest—"shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if, as and when said interest in favor of said parties terminate." Given that the Prochaskas' reservation is ineffective until the prior reservations terminate, we conclude the parties intended the Prochaskas' royalty interest to be a future interest, not a present or immediately effective one. *See Bagby,* 627 S.W.2d at 193–95. Thus, the "provided" clause and the "intent" clause work together to establish that the Regmunds' are immediately entitled to the other half of the landowner's royalty not reserved by the Prochaskas.

### The "provided" clause

The language in the "provided" clause describing the outstanding mineral royalty reservations is potentially inconsistent with the construction that the Prochaskas reserved a floating royalty interest. The "provided" clause describes the "outstanding mineral royalty reservations" as "each of One-fourth of one-eighth (1/8) royalty" and the "intent clause" describes them as "the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved." If by "outstanding mineral royalty reservations" the parties meant "royalty interests," these would be fixed royalty interests, and it would be difficult to conclude the Prochaskas' reservation of those interests could transform them into floating interests.

However, the Prochaska–Regmund deed specifically refers to and identifies the deeds creating the interests with which the

Prochaskas' reservation is "burdened" and to which it "covers and relates." Thus, the deeds were incorporated into the Prochaska–Regmund deed. *See Cockrell,* 299 S.W.2d at 675 (holding the "subject to" clause in a deed incorporated mineral leases to define the estate conveyed, and the nature, extent and character of such estate); *Petty,* 816 S.W.2d at 439; *see also Scheller v. Groesbeck,* 231 S.W. 1092, 1093 (Tex.Com.App.1921, judgm't adopted) (stating "that all instruments in a chain of title when referred to in a deed will be read into it ... [is] so familiar that citation of authorities is unnecessary"); *Center-Point Energy Houston Elec., L.L.P. v. Old TJC Co.,* 177 S.W.3d 425, 430 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (same). In addition, we may "construe an instrument containing a reservation or exception together with other instruments to which it refers." *Johnson,* 683 S.W.2d at 216 (construing unambiguous reservation before it with a prior reservation referenced by the reservation before it) (citing *Williams,* 254 S.W.2d at 178 (analyzing whether a deed reserved a mineral or royalty interest, in part, by considering the language of a mineral lease referred to in the deed)). Therefore, we conclude the Prochaska–Regmund deed, by specifically referencing and identifying the prior deeds, incorporates their description of those interests into itself, like the "subject to" clause in *Cockrell* and the reservation in *Johnson.*[7] *See Cockrell,* 299 S.W.2d at 675; *Johnson,* 683 S.W.2d at 216.

The prior deeds clarify that each "outstanding mineral royalty reservation" contains a determinable one-quarter floating royalty interest. The earlier deeds state that the grantors reserved "an undivided one-fourth (1/4) interest in and to all minerals of every character and kind." The deeds then stripped those mineral interests of the rights to receive bonuses and delay rentals, and the grantors were not required to join in or ratify mineral leases

---

**7.** We do not consider this court's decision in *Hausser v. Cuellar* to foreclose our consideration of the incorporated deeds. 345 S.W.3d 462 (Tex.App.-San Antonio 2011, pet. denied) (en banc). In *Hausser,* this en banc court disapproved an earlier panel opinion because "[r]ather than construing the four corners of the deed to harmonize and give effect to all its provisions ... [the panel] relied on a prior deed to provide the interpretation." 345 S.W.3d at 470 (disapproving the analysis in *Neel v. Killam Oil Co., Ltd.,* 88 S.W.3d 334 (Tex.App.-San Antonio 2002, pet. denied)). The *Hausser* court pointed out that the earlier opinion's "analysis began with a discussion of the conveyance that preceded the [deed being construed]." *Id.* The court looked to the prior deed to determine the amount of the royalty interest received by the grantor of the deed before it, and construed the deed before it from the assumption that the grantor only intended to convey that which he had received. *Id.* The *Hausser* court's disapproval was directed at the previous court's reliance on an earlier deed to provide the construction of the nature and size of the interest conveyed in the deed before it. *See id.*

We distinguish our analysis from the one *Hausser* disapproved. The prior deed relied on by the *Neel* court does not appear to have been referenced in the deed actually being construed, whereas the reservation before us does refer to and identify the deeds creating the prior interests. *See Cockrell,* 299 S.W.2d at 675; *Johnson,* 683 S.W.2d at 216. Thus, the Graham–Prochaska deed incorporated the terms of the prior reservations. Additionally, we note the *Neel* court assumed the grantor of the deed before it only intended to convey that which he had received and construed the deed before it in accordance with the prior deed through which he had received his interest. Unlike the *Neel* opinion, our analysis of the language describing the Prochaskas' interest rests on its own, and we have reviewed the incorporated deeds solely for the purpose of clarifying the nature of the "prior mineral royalty reservations." For these reasons, we do not view our considering the earlier deeds as inconsistent with *Hausser.*

made by the grantees. Thus, the prior grantors reserved only the right to receive an amount of royalties consistent with a fractional mineral interest, i.e., one-quarter of the landowner's royalty. *See French,* 896 S.W.2d at 798 ("[W]hen a deed conveys a royalty interest by the mechanism of granting a fractional mineral estate followed by reservations, what is conveyed is a *fraction of* royalty, not a fixed fraction of total production royalty."); *Patrick,* 734 S.W.2d at 648 (owner of fractional mineral interest is generally entitled to a proportionate share of the landowner's royalty). Accordingly, if a new lease had been executed while those "outstanding mineral royalty" interests were still in existence, the prior grantors would have received one-fourth of whatever new landowner's royalty was agreed upon because they owned floating royalty interests. *See French,* 896 S.W.2d at 798. Therefore, the "prior outstanding mineral royalty" interests were of the same size and nature as the Prochaskas' reserved interest. There is no conflict in concluding that the Prochaskas' reserved the possibilities of reverter in those "outstanding mineral royalty reservations."

### Other arguments

The Regmunds argue that the absence of certain provisions in the deed precludes us from construing it as reserving a floating royalty interest. They assert that the absence of a "share and share alike" phrase in the deed precludes construing it as reserving a floating royalty interest, claiming that such language was a "factor in [this] court's judgment" in *Hausser.* We do not find any analysis or discussion of the phrase "share and share

alike" in that opinion. The Regmunds also point to the absence of a minimum royalty provision. Notwithstanding our recognition that such a provision is probative of a floating royalty interest, *see Hausser,* 345 S.W.3d at 470 & n. 1, no authority *requires* such a minimum-royalty provision in order to reserve a floating royalty interest. *Cf. Schlittler,* 101 S.W.2d at 545 (holding a floating royalty interest was granted under future leases without any minimum royalty provision in the deed). Moreover, "[w]e determine the parties' intent from the whole document, not by the presence or absence of a certain provision." *Concord Oil,* 966 S.W.2d at 457.

As a final matter, the Regmunds oppose any construction of the deed that would hold that the Prochaskas reserved or excepted the possibilities of reverter to the floating royalty interests contained within the outstanding reservations.[8] They argue, essentially, that because the parties never used the terms "future rights" or "possibility of reverter" to describe the Prochaskas' interest, such a construction would violate the requirements that reservations be made by using "clear language" and that exceptions "identify, with reasonable certainty the property to be excepted from the larger conveyance." This argument misapplies the requirement that reservations be created by "clear language." If a reservation is not created by clear language, it does not exist and cannot be implied by a court. *Monroe,* 707 S.W.2d at 133. But the dispute over the 1950 deed is not focused on whether the deed actually reserved anything from passing to the Regmunds; the reservation's four clauses manifestly ex-

---

8. It is in this context that the parties dispute whether the deed created an "exception" or "reservation." We are unconvinced this case "call[s] for a discussion of the refined and subtle distinctions between a reservation and an exception in a deed, which terms are fre-

quently used interchangeably and indiscriminately." *King,* 192 S.W.2d at 262. It is sufficient to say both interests are "something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *Id.*

clude *something.* Instead, the parties' dispute is over the nature and amount of the excluded property rights. A comparison with *Monroe* illuminates the difference.

The appellants in *Monroe* held property as tenants-in-common with the appellees' predecessor-in-interest. *Id.* During the period of the tenancy, the appellants conveyed a determinable royalty interest to their son, and prior to the expiration of that interest, the appellants and appellees partitioned their land. *Id.* In the "subject to" clause listing existing mineral interests, the partition deed listed the son's interest as a "1/64th non-participating for a term of 10 years from August 29, 1953, and as long thereafter as oil, gas or other minerals are produced therefrom with reversion to [appellants] equally upon the expiration of said term." *Id.* It did not otherwise mention the interest. *Id.* The court refused to imply that the "subject to" clause created a reservation. *Id.* It held that half of the outstanding possibility of reverter passed to the appellees under the partition deed because the mere mention of the outstanding future interest in the "subject to" clause did not indicate by clear language the intent to exclude any part of that interest from passing under the deed. *Id.* at 133–34.

The 1950 deed bears no resemblance to the partition deed in *Monroe.* The deed's reservation begins "SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns...." There is no question that the parties to the deed intended to exclude a one-half floating royalty interest from passing under the deed. *Cf. Bagby,* 627 S.W.2d at 193–95 (holding appellant-grantors validly reserved the possibility of reverter to a determinable royalty interest where the deed identified the outstanding interest in the "subject to" clause and then reserved that interest).

The parties to the deed then provided a detailed description of the excluded interest, and we have construed that deed in accordance with Texas law to determine the nature of that interest. Our construction of the deed is sufficient to show there is no merit to the contention that the Prochaskas' interest, if it was an exception, was not identified to a reasonable certainty. *Compare Angell,* 225 S.W.3d at 841 (holding exception of "the following described tracts of land *which have heretofore been sold and conveyed* to ... 10 acres conveyed to Jack Ellison ... 2 acres sold to S.A. Bailey ... all of said last mentioned ... acres being out of the Southeast forty acres of said above mentioned [parcel]" sufficiently described the excepted interests), *with State v. Dunn,* 574 S.W.2d 821, 824 (Tex.Civ.App.-Amarillo 1978, writ ref'd n.r.e.) (holding exception of "that part of said tract to be acquired by the Texas State Highway Department for additional right-of-way purposes of Highway 87" failed to identify the excepted area with the requisite certainty).

CONCLUSION

We ascertain only one reasonable construction of the deed's language and hold that the royalty interest reserved by the deed was a floating one-half royalty interest. In 1950, the Prochaskas conveyed the entirety of their present interest to the Regmunds, but they excluded the possibilities of reverter to two floating one-quarter royalty interests contained in outstanding reservations from passing under the deed, and reserved those interests to themselves. Upon the termination of those prior interests, the Prochaskas' future interests became present possessory interests. Therefore, the Prochaskas are entitled to one-tenth of production under the current lease and to one-half of whatever landowner's royalty may be negotiated under fu-

ture leases. The judgment of the trial court is affirmed.

MARIALYN BARNARD, Justice, dissenting.

Admittedly, without reference to the John Hancock/Joslin and Joslin/Powell deeds, the majority could not reach the conclusion that the 1950 deed reserved to Prochaska a floating one-half royalty interest as opposed to a fixed one-sixteenth royalty interest. Because Texas law mandates the 1950 deed be harmonized by reference only to the language within the four corners of the document, I must respectfully dissent.

### Proper Interpretation of an Unambiguous Deed

I believe the majority misapplies the law pertaining to proper deed construction, resulting in an incorrect construction of the unambiguous 1950 deed.[1] Because of a misinterpretation of the law relating to the proper construction of unambiguous deeds, the majority determines the 1950 deed provides for a floating one-half royalty interest rather than a one-sixteenth fixed royalty interest. I disagree with the majority. Under a proper application of the law, the Regmunds are correct in their claim that the provisions of the 1950 deed, when harmonized, reserved a fixed one-sixteenth royalty interest in favor of Prochaska.

The majority reaches its conclusion because it is based, from the outset, on an incorrect premise, i.e., that a court is permitted to look outside the four corners of an unambiguous deed to interpret the parties' intent. The majority believes a court may look at documents outside the deed in question in order to interpret it if the other documents upon which the court relies are referenced in the deed. Majority Op. at 665. The majority includes a string cite of cases in support of this proposition. However, these cases do not apply to this case. In essence, the majority has created an exception to the long-recognized "four corners rule." *See Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991); *Hausser v. Cuellar,* 345 S.W.3d 462, 467 (Tex.App.-San Antonio 2011, pet. denied) (en banc).

According to the Texas Supreme Court:

The primary duty of a court when construing [an unambiguous] deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule. *Luckel,* 819 S.W.2d at 461; *see also French v. Chevron U.S.A. Inc.,* 896 S.W.2d 795, 796 (Tex. 1995); *Hausser,* 345 S.W.3d at 467; *Garza v. Prolithic Energy Co., L.P.,* 195 S.W.3d 137, 141 (Tex.App.-San Antonio 2006, pet. denied). The four corners rule is a "canon of construction" and means a court must look *at the instrument in question* to ascertain the intent of the parties. *French,* 896 S.W.2d at 797 (citing *Luckel,* 819 S.W.2d at 461) (emphasis added).

The majority correctly cites the four corners rule as stated in *Luckel,* but then essentially abrogates the rule, or creates an exception to it, by relying on documents other than the deed to interpret the parties' intent. To support its decision to rely on documents outside the four corners of the 1950 deed, the majority relies on several cases, which in my opinion are inapplicable to the interpretation of an unambiguous deed because they either do not stand

---

1. I agree with the majority and the parties that the 1950 deed is unambiguous. An unambiguous deed "is so worded that it can be given 'a certain or definite legal meaning or

interpretation.'" *Hausser v. Cuellar,* 345 S.W.3d 462, 467 (Tex.App.-San Antonio 2011, pet. denied) (en banc) (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

for the proposition cited or are distinguishable on the facts or issue presented.

The majority begins with *Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956). In *Cockrell*, the supreme court was called upon to interpret the amount of sulphur royalties due under a deed. 299 S.W.2d at 673–78. In making its determination, the majority looked to documents outside the deed, specifically certain mineral leases, to determine the amount of royalties due. *Id.* However, a close reading of the case makes it apparent that although never specifically stated, the majority of the court found the deed in question to be ambiguous, which made it acceptable to look beyond the four corners of the deed and incorporate extrinsic documents. *Id.* at 676–77.

There are several indicators in the opinion that strongly suggest the court believed it was dealing with an ambiguous deed. First, the court relied upon the canon that "a deed can pass no greater estate than that owned by the defendant." *Id.* at 676. As recognized in *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, such canons "*do not apply when the deed is unambiguous.*" 192 S.W.3d 808, 811 (Tex.App.-Eastland 2006, pet. denied) (emphasis added). Thus, the court's reliance on a canon of construction points to a finding of ambiguity. Second, the court specifically noted that at trial, numerous documents were introduced into the record to show the defendant recognized the leases, i.e., the extrinsic documents. *Id.* at 677. The introduction of such documents also points to ambiguity. Finally, the dissent by Justice Smith makes plain reference to his disagreement with the majority's decision to look beyond the four corners of the deed because *he* found the deed to be unambiguous. *Id.* at 679 (Smith, J., dissenting). Therefore, in *Cockrell*, the court was obviously attempting to construe an ambiguous deed.

I agree that where the deed in question is ambiguous, reference to other canons of construction, including the canon that permits reference to extrinsic documents, is not precluded. However, the majority determined the 1950 deed was unambiguous, and it was therefore limited to consideration of the language in the deed itself, *see Luckel*, 819 S.W.2d at 461, and there is nothing in *Cockrell* that holds to the contrary. Accordingly, the majority's reliance on *Cockrell*, which construed an ambiguous deed by reference to outside documents, is misplaced.

Moreover, and importantly, the *Cockrell* court's holding was very specific, stating that the phrase "*subject to*" in a mineral deed serves to incorporate the "subject to" documents. *Cockrell*, 299 S.W.2d at 676. In *Cockrell*, the deed stated it was "subject to" certain mineral leases. *Id.* at 674. Based on this specific language, the court determined the leases were incorporated into the deed. This "subject to" language, which was the very basis of the court's decision to consider the extrinsic documents in *Cockrell*, is completely absent from the language in the deed before this court.

In the 1950 deed, the phrase "subject to" does not appear. In fact, the deed language merely states Prochaska's reservation is "burdened with paying" certain mineral royalty reservations which are found in the John Hancock/Joslin and Joslin/Powell deeds. To suggest, as does the majority, that this language is comparable to the "subject to" language relied upon in *Cockrell* and its progeny misconstrues the bases for those holdings. Burdening an interest with a payment requirement, which is all the 1950 deed does with regard to the extrinsic deeds, is wholly different from making the entire deed "subject to" and thereby incorporating the extrinsic documents. Thus, *Cockrell* does not sup-

port the majority's decision to rely upon the extrinsic John Hancock/Joslin and Joslin/Powell deeds.

The majority also relies upon a 1991 case from this court, *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432 (Tex.App.-San Antonio 1991, writ denied) (op. on reh'g), which involved the interpretation of an easement agreement. However, that case, like *Cockrell*, does not support the majority's decision to look outside the four corners of the 1950 deed because it too involved the interpretation of what the majority obviously determined to be an ambiguous easement agreement, which would permit the court to look beyond the easement agreement itself. *See id.* at 434–36. Moreover, the easement agreement in *Petty*, like the deed in *Cockrell*, contained the specific "subject to" language, incorporating the extrinsic documents the court used in determining the meaning of the agreement. *Id.* at 435. Thus, just as the decision in *Cockrell* is inapposite because the deed here does not contain the requisite "subject to" language, the decision in *Petty* is equally inapplicable.

The other cases relied upon by the majority are also inapposite. The majority cites *Johnson v. Fox* for the proposition that courts are permitted to construe an instrument containing a reservation with other instruments to which the reservation refers. 683 S.W.2d 214, 216 (Tex.App.-Fort Worth 1985, no writ). *Johnson* relies on two cases for that proposition, a 1952 case from this court and 1936 case from the Texarkana Court of Appeals. *See id.* (citing *Williams v. J. & C Royalty Co.*, 254 S.W.2d 178, 178–80 (Tex.Civ.App.-San Antonio 1952, writ ref'd); *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex.App.-Texarkana 1936, writ ref'd)). However, the deeds at issue in both *Williams* and *Tipps* contained the "subject to" language discussed above, thereby incorporating the extrinsic instruments. *See* 254 S.W.2d at 178, 101 S.W.2d at 1076, 1078–79. As noted above, such language was not included in the 1950 deed. Thus, *Johnson* is no more applicable than *Cockrell* or *Petty*.

The majority relies on the cases cited above, glossing over the absence of the "subject to" language in the deed at issue, simply stating, "... by specifically referencing and identifying the prior deeds, [the 1950 deed] incorporates their description of those interests into itself, like the "subject to" clause in *Cockrell* and the reservation in *Johnson*." Majority Op. at 663. Referencing and identifying a document is a far cry from incorporating it. The case law cited by the majority specifically relied on the "subject to" language in deciding it could look at the extrinsic documents—there is nothing to suggest these courts would have looked outside the four corners of the documents being interpreted but for that very specific phrase. However, without this interpretation of the case law, the majority is unable to support its decision to look outside the four corners of the 1950 deed.

The final two cases relied upon by the majority for the proposition that it is permissible to look beyond the four corners of the 1950 deed to determine the parties' intentions are *Scheller v. Groesbeck*, 231 S.W. 1092 (Tex. Comm'n App.1921, judgm't adopted)[2] and *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). The courts in these cases held "all instruments in a chain of title, when referred to in a deed or

---

2. I note that where the Texas Supreme Court adopts the judgment of a Commission decision, this indicates the supreme court approved neither the Commission's specific holdings nor its reasoning. *See The Greenbook, Texas Rules of Form* 5.2.4 (Texas Law Review Ass'n ed., 12th ed. 2010).

any instrument conveying an interest in real property will be read into it." This statement was made in the context of the issue presented in those cases, which was *ownership* or *extent of ownership* based on title, and the documents considered in these cases were actually within the chain of title.

The phrase "chain of title" refers to documents showing successive ownership history of the property, and includes the successive conveyances commencing with the patent from the government ... down to and including the conveyance to the present holder." *Hahn v. Love*, 394 S.W.3d 14, 28 (Tex.App.-Houston [1st Dist.] 2012, pet. denied). It is axiomatic that when there are competing claims regarding title to property that documents referenced in the applicable deeds, i.e., documents within the chain of title, are subject to consideration. Here, however, the extrinsic documents the majority considers are not within the chain of title with regard to ownership. Rather, they are peripheral burdens on title and are not part of the successive ownership history. *See id.* This is not a chain of title case. Accordingly, neither *Scheller* nor *Center-Point* support the majority's foray beyond the four corners of the 1950 deed.

Based on the foregoing, I do not believe the majority has cited any germane authority that would support its decision to consider the John Hancock/Joslin and Joslin/Powell deeds in determining the parties' intent with regard to the Prochaska reservation. Additionally, the majority has rejected recent authority from this court, attempting, but failing, to distinguish it. *See Hausser*, 345 S.W.3d at 467.

In *Hausser*, a majority of this court, sitting en banc, specifically held: "[W]e construe a deed and harmonize and give effect to all its provisions by ascertaining the parties' intent from the four corners of the document." 345 S.W.3d at 469. In determining what interest was conveyed by the deed at issue in *Hausser*, we rejected this court's prior panel decision in *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334 (Tex.App.-San Antonio 2002, pet. denied), which, in determining what interests the parties were entitled to, considered a prior deed, i.e., an extrinsic document. *Id.* We specifically disapproved of *Neel* because "rather than construing the four corners of the deed to harmonize and give effect to all its provisions ... *Neel* relied on a prior deed to provide the interpretation." *Id.* That is precisely what the majority is doing in this case with regard to the 1950 deed. The majority, however, claims the holding in *Hausser* is no bar to its decision to look beyond the four corners because "[t]he prior deed relied upon by the *Neel* court does not appear to have been referenced in the deed actually being construed, whereas the reservation before us does refer to and identify the deeds creating the prior interests." Majority Op. at 663. I must take issue with the majority's attempt to distinguish *Hausser*, a distinction the majority makes in a footnote. *See* Majority Op. at 663 n. 7.

First, *Neel* does not state whether the prior deed was referenced in the deed at issue; the opinion is silent on this matter. Thus, it is a leap for the majority to simply conclude the prior deed was not referenced in the subsequent deed. Second, and most importantly, nowhere in *Hausser* did we state our disapproval of *Neel* was based on the fact that the deed at issue failed to reference or somehow incorporate the prior deed. Rather, our disapproval was based on the fact that the *Neel* court looked beyond the four corners, not on its reasons for doing so. There is absolutely no suggestion in *Hausser* that if the prior deed in *Neel* had been referenced in the deed at issue, we would have found *Neel* controlling.

Given my strong conviction that the majority improperly exceeded the scope of review with regard to the unambiguous 1950 deed, I will now review the deed in accordance with the four corners doctrine and the appropriate rules of construction to determine the type and extent of the Prochaska reservation.

### Applying the Proper Rules of Construction to the Unambiguous 1950 Deed

As noted above, the majority's analysis contains an important misapplication of the law. The result is the creation of an exception to the long-standing four corners rule and, relevant to the case before us, an incorrect interpretation of the 1950 deed. If the majority cannot refer to the prior deeds, the majority admittedly cannot reach the conclusion that the interest in question is a floating one-half royalty interest as opposed to a fixed one-sixteenth royalty interest.

When interpreting an unambiguous deed, "[t]he primary duty of a court is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Luckel*, 819 S.W.2d at 461. Thus, in ascertaining the intent of the parties in this case, we look only to the four corners of the 1950 deed. *See id.* We must examine and consider the entire writing, harmonizing and giving effect to all the provisions of the deed, even when different parts of the deed seem inconsistent or contradictory. *Hausser*, 345 S.W.3d at 466. We must assume the parties intended every clause to have some effect and interpret the deed so that no provision is rendered meaningless. *Hausser*, 345 S.W.3d at 466 (citing *Luckel*, 819 S.W.2d at 461). Each word and phrase should only be given its plain and grammatically correct meaning unless it would clearly defeat the parties' intent. *Hausser*, 345 S.W.3d at 466; *see Moon Royalty LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex.App.-Eastland 2007, no pet.). Further, no provision of the deed should be struck unless a conflict exists which is irreconcilable and causes one part of the deed to destroy another part. *Hausser*, 345 S.W.3d at 466.

As noted above, all parties agree, as does the majority, that the 1950 deed is unambiguous. Applying the applicable four corners rule, I would hold the reserved royalty interest in favor of Prochaska is, contrary to the majority's conclusion, a fixed one-sixteenth royalty interest.

The royalty reservation language is mentioned in the following three clauses in the 1950 deed: "save and except" clause; "and provided" clause; and "intent" clause. The save and except clause states:

> SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns, one-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases and for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof, same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production except taxes;

*   *   *

The "and provided" clause states:

> AND PROVIDED this reservation is burdened with paying the two outstanding mineral royalty reservations each of one-fourth (1/4) of one-eighth (1/8) royalty, one of which reservations is described in the deed from John Hancock Mutual Life Insurance Company to E.S. Joslin, now of record in Vol. 141, page 161, Deed Records of Karnes County, Texas, and the other reservation is described in the deed from E.S. Joslin, et ux to A.W. Powell, Jr., et al. now of record in Vol. 165, page 80 of the Deed Records of Karnes County, Texas; and

this reservation shall only be effective to the extent that one or both of said outstanding reservations become terminated.

Finally, the "intent" clause states:

It being the intent of the parties hereto that John W. Regmund and wife, Frances M. Regmund, as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed, and the reservation herein above recited in favor of the grantor herein, shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if as and when said interest in favor of said parties terminate.

These clauses can be summarized as follows: (1) the "save and except" clause reserves to Prochaska, as of the date of the deed, a royalty interest of one-half (1/2) of one-eighth (1/8th), that is, a one-sixteenth (1/16th) interest, in all oil, gas, and other minerals on the property in question;[3] (2) the "and provided" clause advises that Prochaska's one-sixteenth (1/16th) royalty reservation "is burdened with paying the two outstanding mineral royalty reservations," which are described in extrinsic deeds from the John Hancock Mutual Life Insurance Company to E.S. Joslin and from Joslin to A.W. Powell Jr., until they terminate; and (3) the "intent"

clause merely clarifies that the Regmunds are entitled to the other half of the landowner's royalty that was not reserved by Prochaska, and Prochaska's reserved interest is burdened with paying the royalties relating to the reservations in the John Hancock/Joslin and Joslin/Powell deeds until they terminate.

Reading these clauses together, and harmonizing them as we must, it is clear the parties intended to convey to the Regmunds an unburdened one-half (1/2) of the usual one-eighth (1/8th) royalty interest in all oil, gas, and other minerals in the 735.85 acres in Karnes County.[4] Prochaska, under the "save and except" clause, reserved to himself the other one-half (1/2) of the landowner's one-eighth (1/8th) royalty interest. Prochaska's reservation was burdened, under the "and provided" clause, with paying the prior reservations described in the John Hancock/Joslin and Joslin/Powell deeds. The intent clause merely clarifies the parties' intent as expressed in the "save and except," and "and provided" clauses, and clarifies that the payment burden on Prochaska's reservation expires when the interests previously reserved in the John Hancock/Joslin and Joslin/Powell deeds terminate. Nowhere in the 1950 Deed are there any conflicting fractions or any confusion on what the reservations were intended to be, either in type or amount.

It is clear from the "four corners" of the unambiguous 1950 deed that the (1/2) of (1/8th) royalty interest reserved by Pro-

---

3. The majority asserts, contrary to my position, that the reservation was ineffective until the reservations described in the John Hancock/Joslin and Joslin/Powell deeds expired. Majority Op. at 665. Under the plain language of the "save and except" and the "and provided," clauses, it is clear Prochaska was immediately entitled to the interest reserved in the "save and except clause. The "and provided" clause merely advises that Prochaska's inter-

est is burdened, requiring him to pay the outstanding royalty reservations contained in the John Hancock/Joslin and Joslin/Powell deeds until they expire. And, those reservations expired in 1963.

4. I agree with the Prochaskas that the royalty interest received by the Regmunds pursuant to the 1950 deed is an unburdened, fixed one-half (1/2) of one-eighth (1/8th), i.e., a fixed one-sixteenth interest.

chaska is a "fractional royalty" and remains constant regardless of the amount of royalty that might, in the future, be negotiated in an oil and gas lease. *See Tiller v. Tiller,* 685 S.W.2d 456, 458 (Tex.App.-Austin 1985, no writ) (defining "fractional royalty" as fixed interest.). To contend otherwise, i.e., to contend Prochaska received a one-half royalty interest in any future lease is to ignore the "of the one-eighth (l/8th)" and "same being equal to one-sixteenth (l/16th) of all oil, gas and other minerals" language.

The majority asserts the "one-eighth royalty" must be read with the surrounding descriptive language. I agree. However, to reach the conclusion that Prochaska reserved a one-half royalty interest, the majority asserts the "one-eighth royalty" in the save and except clause is modified by the "to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof," and therefore describes a floating interest. However, the majority ignores the rest of the clause that provides clarity and sets out the exact meaning of the entire clause, that is the "same being equal to one-sixteenth (l/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production except taxes." The "same being equal to one-sixteenth (l/16th)" removes any doubt about the meaning: the save and except clause contains a l/16th reservation to Prochaska of the land owner's royalty. To hold otherwise renders the "same being equal to one-sixteenth (l/16th) of all oil, gas and other minerals" meaningless, which we cannot do. *See Hausser,* 345 S.W.3d at 466 (referencing *Luckel,* 819 S.W.2d at 461).

With regard to the nature of the Prochaska reservation, looking only within the four corners of the deed, there is no indication the parties intended the l/16th royalty interest to be a floating interest.

Rather, it is clear the 1/16th royalty interest is a fixed or "fractional" royalty interest entitling Prochaska to "an absolute fraction of production—it is not affected by the amount of the landowner's royalty." *Luckel,* 819 S.W.2d at 464; *Watkins v. Slaughter,* 144 Tex. 179, 189 S.W.2d 699, 699–700 (Tex.1945) (holding reservation of "a 1/16th in and to all of the oil, gas and other minerals" is fixed royalty interest). The majority reaches its conclusion that the interest is floating only by consideration of the John Hancock/Joslin and Joslin/Powell deeds and such consideration is clearly prohibited under Texas law concerning interpretation of unambiguous deeds.

The clear, objective intent of the parties, based on harmonization of the applicable clauses in the 1950 deed, and without looking beyond the four corners, was to convey all of the land to the Regmunds, grant the Regmunds a fixed one-sixteenth royalty interest, and to reserve to Prochaska a fixed one-sixteenth royalty interest, burdened by prior interests until such interests terminate. Accordingly, pursuant to the terms of the 1950 deed as harmonized and without reference to outside documents, I would hold the royalty interest reserved by Prochaska is a simple one-half of one-eighth, i.e., a fixed l/16th royalty interest.

### *Conclusion*

I believe looking beyond the four corners of the unambiguous 1950 deed in an attempt to determine the parties' intent is not permissible under Texas law. In the absence of such error, the 1950 deed clearly establishes the parties' intent to reserve to Prochaska a fixed one-sixteenth royalty interest. Accordingly, I dissent.