# NO. 12-17-00195-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHARLES E. THOMPSON, AS TRUSTEE OF THOMPSON-PHILP FAMILY TRUST,*<br>*APPELLANT* | § | *APPEAL FROM THE 123RD* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *TAEDA INVESTMENTS, LLC D/B/A TAEDA MANAGEMENT,*<br>*APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Charles E. Thompson, as Trustee of the Thompson-Philp Family Trust, appeals from an adverse summary judgment rendered in this breach of contract suit brought by Taeda Investments, LLC d/b/a Taeda Management. In three issues, Thompson contends the contract is ambiguous, material issues of fact exist, and the trial court erroneously ordered specific performance. We affirm.

## BACKGROUND

The Thompson-Philp Family Trust owns approximately 552 acres in Shelby County, Texas. On September 10, 2008, Thompson, as Trustee, signed a property management agreement with Taeda Management, appointing it sole agent in connection with the management of the mineral property owned by the Trust. Section one of the contract provides that the agency relationship was for a four year term. The agreed-upon compensation was set out in section four of the agreement as follows:

> [The Trust] agrees to pay [Taeda] as consideration for efforts set forth hereunder ten percent (10%) of the following:

> (a) the gross amount of any per acre bonus money received in exchange for the execution, extension, or renewal of any oil, gas, and mineral lease executed by [the Trust] covering the Mineral Property; and
>
> (b) and [sic] any money paid as damages for surface use in connection with any operations under any such oil, gas and mineral lease.
>
> Additionally, upon the execution of any oil, gas and mineral lease by [the Trust] covering the Mineral Property, [the Trust] agrees to grant [Taeda] a 1/10 overriding royalty interest in the Mineral Property, which will entitle [Taeda] to 10% of [the Trust's] revenue gained from the production of oil and/or gas therefrom.

Taeda negotiated a two year lease with XTO Energy, Inc., signed on June 17, 2009. Thompson made some payments pursuant to the parties' agreement but refused to pay after September 10, 2012. Taeda sued for breach of contract and, alternatively, for declaratory judgment. Taeda construes the contract as providing for a 1/10 royalty in the mineral property in perpetuity, not just for the four year term of the contract. Thompson counterclaimed for breach of contract and money had and received.

In its first motion for summary judgment, Taeda stated that the sole issue is whether Thompson's obligation to pay 10% of the Trust's revenue from the lease terminated on September 10, 2012. Arguing that the agreement is unambiguous, it asserted that the four year term applies only to the duration of its agency authority and has no bearing on Thompson's obligations to make payments under the agreement. Arguing that Thompson's interpretation is unreasonable, Taeda asked the court to grant summary judgment on its declaratory judgment action. Taeda requested a declaration that the contract is unambiguous and that Taeda is entitled to receive, either in perpetuity or for the life of the lease, 10% of bonus money received, money paid as damages for surface use, and revenue from the production of oil and gas. The trial court granted the motion, effectively declaring that the contract is not ambiguous and payments are to be made after September 10, 2012.

Taeda filed its second motion for summary judgment asserting that Thompson breached the agreement by failing to pay 10% of the revenue the Trust received after September 10, 2012. In support, it presented Thompson's deposition testimony stating that he did not pay Taeda any portion of any payments the Trust received after September 10, 2012. The trial court granted Taeda's second motion for summary judgment, effectively ruling that Thompson breached the agreement by failing to pay a 10% royalty after September 10, 2012.

2

In its motion for final summary judgment, Taeda asserted that the only remaining issues to be resolved are the amount of damages sustained by Taeda and the validity of Thompson's counterclaims. It argued that Thompson breached the agreement by failing to convey the royalty interest to Taeda and by failing to pay 10% of the Trust's revenue associated with production under the lease after September 10, 2012. Taeda also argued there are no issues of fact regarding whether it breached the contract or is liable for money had and received, entitling it to summary judgment on Thompson's counterclaims. Taeda claimed to be owed $165,755.52 plus $38,236.25 in attorney's fees. It also prayed for an order that Thompson convey a 2.5% non-participatory royalty interest to Taeda effective July 25, 2016.

The trial court granted the motion, awarding Taeda $165,755.52 in damages, $38,236.25 in attorney's fees, court costs, and pre- and post-judgment interest. The court further ordered Thompson to specifically perform under the terms of the agreement and "convey by written instrument a 2.5% non-participating royalty interest" to Taeda, effective July 25, 2016, for a term not to exceed the date of expiration of the XTO lease. Further, the court ordered that Thompson take nothing on his counterclaim.

## STANDARD OF REVIEW

A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A plaintiff moving for summary judgment must conclusively establish all essential elements of its cause of action as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of fact if reasonable and fair minded jurors could differ in their conclusions in light

3

of all the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

## CONTRACT CONSTRUCTION

In his first issue, Thompson asserts that the trial court erred in determining that the agreement is not ambiguous. He argues that the agreement is reasonably susceptible to more than one interpretation regarding when Thompson's obligation to pay a royalty interest would expire. Relying on paragraph one of the agreement, which states that Taeda's agency authority ends on the fourth anniversary of the date on which it began, Thompson argues that the Trust cannot be required to make royalty payments beyond September 10, 2012. Thompson also argues that the agreement is uncertain and doubtful as to its meaning because it contains a mutual mistake. Specifically, he argues that, under the agreement, the Trust granted to Taeda an overriding royalty interest in the mineral property although the Trust did not have the legal authority to grant an overriding royalty interest.

In his second issue, Thompson contends that the trial court erred in granting summary judgment for Taeda because genuine issues of material fact exist with respect to the mutual mistake in the agreement. He argues that the disputed meaning of the term "overriding royalty interest" in paragraph four creates fact issues. He argues that, at the time the agreement was drafted, he believed the agreement required him to pay an overriding royalty interest until the completion of the four year term.

## Applicable Law

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id*. If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam); *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393. When a contract contains an

ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Id*.

A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the limitations of the parol evidence rule. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014). The parol evidence rule is a rule of substantive law which provides that, in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written contract that is facially complete and unambiguous. *Gail v. Berry*, 343 S.W.3d 520, 523 (Tex. App.−Eastland 2011, pet. denied). However, "[t]he [parol evidence] rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). We may consider the facts and circumstances surrounding a contract, including the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction. *Kachina Pipeline Co.*, 471 S.W.3d at 450.

Negotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole. *Houston Expl. Co*., 352 S.W.3d at 469-70. Evidence of circumstances can be used to inform the contract text and render it capable of only one meaning. *Kachina Pipeline Co*., 471 S.W.3d at 450.

We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Technical words and terms in a contract are to be construed by the courts as those terms are usually understood by persons in the profession or business to which the terms relate, unless it is clear that the terms were used in a different sense. *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 63 (Tex. App.−Texarkana 2004, pet. denied). The agreement will be enforced as created regardless of whether the parties contracted wisely. *Id*. at 62.

Under the doctrine of mutual mistake, an agreement may be avoided where the parties contracted under a misconception or mistake of a material fact. *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied). The elements of mutual mistake are: 1) a mistake of fact, 2) held mutually by the parties, 3) which materially affects the agreed-upon

exchange. *Id*. When an agreement is unambiguous, the doctrine of mutual mistake as to the meaning of the terms used is unavailable as a matter of law. *Baldwin v. New*, 736 S.W.2d 148, 153 (Tex. App.—Dallas 1987, writ denied).

A working interest is an operating interest under an oil and gas lease that provides its owner with the exclusive right to drill, produce, and exploit the minerals. *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 599 n.3 (Tex. App.—Austin 2000, pet. denied). An overriding royalty interest is a given percentage of the gross production carved from the working interest of the oil and gas lease, but not chargeable with any of the expenses of operation. *Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 872–73 (Tex. 2016). When an oil and gas lease terminates, the overriding royalty created in an assignment of the lease is likewise extinguished. *Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798, 804 (Tex. 1967).

## Analysis

In interpreting the agreement, we are authorized to consider the circumstances surrounding the contract, including negotiations. *See Kachina Pipeline Co*., 471 S.W.3d at 450. In an effort to show the parties' intent, Thompson presented his deposition testimony wherein he stated that he intended for all obligations under the agreement to expire on September 10, 2012. He also submitted an email from his attorney, Shane Stokes, to Mike Bird, a principal of Taeda, dated September 3, 2008, a week before the agreement was signed, in which Stokes relayed the changes to the draft "Mineral Management Contract" wanted by Thompson. Stokes stated that "[t]he term will be for 4 years from the date of signing, and no automatic renewal." The email did not address the specific question of the expiration date of the compensation requirements. Nor did it mention a royalty interest. Thompson also presented Stokes' affidavit, dated January 5, 2016, in which he explained that the initial draft of the contract had provisions that allowed for a six-year term, plus an automatic renewal of the contract upon the expiration of the initial term. He further explained that, after discussing his concerns with Thompson, he and Thompson agreed that Thompson would appoint Taeda as his agent for a period of four years, and that the contract would not automatically renew. He did not want Thompson to be bound "to a recurring obligation and continuing costs." Stokes stated that Thompson "agreed to pay Taeda ten percent of the amounts he received as a result of their efforts, subject to the four-year term." He explained that, in his opinion, "a perpetual ten percent royalty on any and all funds received by

6

Charles Thompson is unconscionable and unfair, and it is against the reading of the contract we negotiated."

Stokes's email does not shed any light on the parties' negotiations regarding the term for payment of consideration or the type of royalty the Trust was to pay. Stokes's affidavit does not address the negotiations or explain the use of the term "overriding royalty interest." Stokes' litigation-induced statement that, at the time of negotiations, they did not intend for any provision to live on after four years is not the kind of negotiation-related evidence we are to consider. Thompson's summary judgment evidence does not provide useful evidence of the circumstances surrounding the contract negotiations as it does not address the question of the term for which the Trust is to pay consideration. This evidence does not inform the contract text. *See id*. Therefore, we look to the text of the agreement to ascertain the parties' intent. *See Coker*, 650 S.W.2d at 393.

Paragraph one clearly states that the agency relationship lasts for a term of four years. The remaining paragraphs do not state the length of the term applicable to those provisions. Thus, the agreement does not contain a provision expressly stating that the Trust's obligation to pay the specified consideration expires after four years.

Paragraph 4(a) provides that the Trust will pay to Taeda 10% of "any per acre bonus money received in exchange for the execution, extension, or renewal of any oil, gas, and mineral lease executed by [the Trust] covering the Mineral Property." A bonus is any consideration, a sum certain, given for execution of a mineral lease beyond the usual royalty. *Griffith v. Taylor*, 291 S.W.2d 673, 676 (Tex. 1956). At the heart of the agency agreement is Taeda's responsibility to find a lessee and negotiate a lease for execution, which had to be done during the four year agency term. At the time the agreement was signed, it was foreseeable that extensions or renewals of any lease Taeda obtained during the agency period could occur after the end of the four year term. Likewise, damages for surface use could arise after the four year agency, triggering paragraph 4(b)'s requirement that the Trust pay 10% of any money paid as damages for surface use in connection with operations under the lease. These provisions require an interpretation that consideration shall be paid after the end of the four year agency term.

As further consideration, the agreement required the Trust, upon the execution of the XTO lease, to grant to Taeda a one tenth "overriding royalty interest" in the mineral property. Because an overriding royalty interest is carved from the working interest, it could be assigned

by XTO, the working interest owner, but not the Trust. *See Chesapeake Expl., L.L.C.*, 483 S.W.3d at 872. The remainder of the sentence in the agreement referencing the overriding royalty interest provides "which will entitle [Taeda] to 10% of [the Trust's] revenue gained from the production of oil and/or gas therefrom." The Trust, as landowner, has a royalty interest for the life of the lease and the right to assign it. *See Graham v. Prochaska*, 429 S.W.3d 650, 656 (Tex. App.—San Antonio 2013, pet. denied). A mineral interest owner may create a royalty interest out of either total production achieved under a lease or from the landowner's royalty. *Id*. This diminished royalty interest is termed a "nonparticipating" royalty interest because the holder only has the right to a share of production. *Id*.

Although the term "overriding royalty interest" has a generally accepted meaning, the context of the agreement indicates that the term was used in a different sense here, erroneously. The parties could only have intended that the Trust would grant Taeda a 10% interest out of its own interest. Therefore, we will not construe the term "overriding royalty interest" to mean the interest carved from the interest owned by XTO. *See Burke*, 138 S.W.3d at 63. Thompson's unilateral misinterpretation of the contract does not render it ambiguous. *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 743–46 (Tex. App.—Texarkana 2013, no pet.).

Considering the entire agreement, we conclude that the parties did not intend the consideration provisions to expire on September 10, 2012. The agreement is not reasonably susceptible to more than one interpretation, and is therefore not ambiguous. *See Grohman*, 318 S.W.3d at 887; *Coker*, 650 S.W.2d at 393. Because the agreement is unambiguous, the doctrine of mutual mistake as to the meaning of the terms used is unavailable. *Baldwin*, 736 S.W.2d at 153. Therefore, use of the term "overriding royalty interest" does not create fact issues. We overrule Thompson's first and second issues.

## SPECIFIC PERFORMANCE

In his third issue, Thompson asserts that the trial court erred in ordering specific performance. He argues that he fully performed by making all payments to Taeda during the four year term of the lease and, therefore, has not breached the contract. Further, he asserts that the trial court cannot order specific performance of a contract containing a mistake. Additionally, he argues that the agreement leaves more than a reasonable doubt as to what the

8

parties actually intended and, therefore, is not sufficiently certain as to the term of performance so that the court could determine the legal obligations of the parties.

Specific performance of a contract is an equitable remedy that may be awarded, at the trial court's discretion, upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc*., 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). A party seeking specific performance must demonstrate that they have performed, or tendered performance, of their obligations under the contract. *Id*.

Thompson complains of the following portion of the trial court's order:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant Charles E. Thompson, Trustee of the Thompson-Philp Family Trust, shall specifically perform under the terms of the Property Management Agreement and convey by written instrument a 2.5% non-participating royalty interest to Plaintiff. The conveyance shall be dated effective July 25, 2016 and shall be for a term not to exceed the date of expiration of the Oil, Gas, and Mineral Lease between The Thompson-Philp Family Trust and XTO Energy, Inc. dated effective June 17, 2009.

It is undisputed that Taeda negotiated the lease executed by XTO and Thompson within the four year agency term. The record shows that the Trust made no payments to Taeda after the end of that four year term and refused to convey any interest to Taeda. As explained above, the agreement is not uncertain as to the term of performance. The agreement requires the Trust to continue to pay, even after September 10, 2012, consideration of 10% of the Trust's revenue from production under the XTO lease. Further, pursuant to the agreement, the Trust is required to grant Taeda a royalty interest. Pursuant to the lease, the Trust was entitled to a royalty of 25% of production. Under the terms of the agreement, Taeda is to receive 10% of that 25%, which is equal to 2.5%. This diminished royalty interest assigned by the Trust from its landowner's royalty is known as a nonparticipating royalty interest. *See Graham*, 429 S.W.3d at 656. Therefore, the trial court correctly determined that Thompson must specifically perform by conveying a 2.5% nonparticipating royalty interest to Taeda. Further, the Trust's royalty interest terminates when the lease terminates. *See id*. Therefore, the trial court correctly determined that the conveyance to Taeda cannot exceed the date of termination of the XTO lease. Accordingly, the trial court did not abuse its discretion in ordering specific performance. We overrule Thompson's third issue.

## **DISPOSITION**

Having overruled all of Thompson's issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered June 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE  29, 2018**

**NO. 12-17-00195-CV**

**CHARLES E. THOMPSON, AS TRUSTEE OF THOMPSON-PHILP FAMILY TRUST,**
Appellant
V.
**TAEDA INVESTMENTS, LLC D/B/A TAEDA MANAGEMENT,**
Appellee

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 13CV32,426)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **CHARLES E. THOMPSON, AS TRUSTEE OF THOMPSON-PHILP FAMILY TRUST**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*